Erik Gunderson, California Bar No. 171982
GUNDERSON EMPLOYMENT LAW
707 SW Washington St., Suite 1410
Portland, OR 97205
Voice: (503) 535-0708
ErikG@GundersonEmploymentLaw.com

Alana G. I. Simmons, *Pro Hac Vice* application pending, Oregon Bar No. 143456
THE DALTON LAW FIRM
1400 SW Montgomery Street
Portland, OR 97201
Voice: (503) 253-6029
Fax: (503) 212-4439
alana@daltonlawfirm.com

Mani Sheik, California Bar No. 245487
SHEIK LAW, INC.
526 Third Street, Suite A
San Rafael, CA 94901
Voice: (415) 205-8490
mani@sheiklaw.us

Attorneys for Plaintiff JENNIFER SHULL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER SHULL,<br><br>Plaintiff,<br><br>v.<br><br>BOUTIQUE AIR, INC., a California Corporation, OPEN TRIP, INC., a California Corporation, and MARK HENDRIX, SHAWN SIMPSON, and MICHAEL RECH, Individuals, | CASE NO. 3:20-cv-8568<br><br>COMPLAINT FOR:<br><br>1. CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY<br>2. VIOLATION OF CALIFORNIA LABOR CODE SECTION 1102.5<br>3. VIOLATION OF OREGON REVISED STATUTE 659A.199 |

Defendants.

4. FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
5. FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF OREGON REVISED STATUTE 659A.112
6. FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 12940(a)
7. VIOLATION OF OREGON REVISED STATUTE 659A.040 (RETALIATION FOR CLAIMING WORKERS' COMPENSATION BENEFITS)
8. VIOLATION OF CALIFORNIA LABOR CODE SECTION 132a (RETALIATION FOR CLAIMING WORKERS' COMPENSATION BENEFITS)
9. SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2
10. SEX DISCRIMINATION IN VIOLATION OF OREGON REVISED STATUTE 659A.030
11. SEX DISCRIMINATION IN VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 12940(a)
12. DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2 (RETALIATION)
13. DISCRIMINATION IN VIOLATION OF OREGON REVISED STATUTE 659A.199
14. DISCRIMINATION IN VIOLATION OF CALIFORNIA GOVERNMENT

CODE SECTION 12940(a) (RETALIATION)
15. AIDING AND ABETTING IN VIOLATION OF OREGON REVISED STATUTE 659A.030(1)(g)
16. VIOLATION OF FEDERAL FAIR LABOR STANDARDS ACT
17. VIOLATION OF OREGON MINIMUM WAGE LAW
18. VIOLATION OF CALIFORNIA MINIMUM WAGE LAW
19. VIOLATION OF ORS 653.641 (SICK LEAVE RETALIATION)
20. VIOLATION OF CALIFORNIA LABOR CODE § 202 (FAILURE TO PAY ALL EARNED WAGES DUE UPON DISCHARGE)
21. VIOLATION OF CALIFORNIA LABOR CODE 226 (FAILURE TO PROVIDE ACCURATE ITEMIZED PAY STATEMENTS)

JURY TRIAL DEMANDED

Comes now Plaintiff JENNIFER SHULL ("SHULL") and through counsel captioned hereinabove, complains against defendants BOUTIQUE AIR, INC. ("BOUTIQUE"), OPEN TRIP, INC. ("OPEN TRIP"), MARK HENDRIX ("HENDRIX"), SHAWN SIMPSON ("SIMPSON"), AND MICHAEL RECH ("RECH") as follows:

## BACKGROUND

1. This action concerns retaliation and discrimination against the plaintiff by her former employer resulting from her complaints of safety violations and employment

discrimination during the time she was employed as a pilot, based variously in Portland, Oregon and Los Angeles, California.

## PARTIES

2. SHULL is a natural person, a woman, and a resident of Texas. At all relevant times hereto prior to February 2019, she was a resident and domiciliary of Portland, Oregon. From February 2019, until after the date of her constructive discharge on October 21, 2019, she was a resident and domiciliary of Los Angeles, California. SHULL holds a Commercial Pilot Certificate issued by the Federal Aviation Administration ("FAA") and was, as alleged herein, employed by BOUTIQUE and OPEN TRIP through October 21, 2019 as a commercial aircraft pilot and second in command.

3. BOUTIQUE is a domestic stock corporation organized pursuant to the laws of the State of California (entity number C3000770) that is headquartered in the City and County of San Francisco. BOUTIQUE's principal business activity is that of a common air carrier, operating scheduled passenger services subsidized by the United States of America's Essential Air Services program, as well as charter flights.

4. OPEN TRIP is a domestic stock corporation organized pursuant to the laws of the State of California (entity number C3217443) that is headquartered in the City and County of San Francisco. OPEN TRIP's principal business activity is that of a common air carrier, operating scheduled passenger services subsidized by the United States of America's Essential Air Services program, as well as charter flights.

5. At all relevant times hereto, BOUTIQUE and OPEN TRIP were co-employers of SHULL.

6. HENDRIX is an individual and was at all material times an employee of BOUTIQUE and, on information and belief, of OPEN TRIP. He coerced, compelled,

incited, aided and/or abetted the acts of discrimination alleged herein. On information and belief, plaintiff alleges that HENDRIX is a domiciliary of Georgia.

7. SIMPSON is an individual and, on information and belief, was at all material times an employee and an officer of BOUTIQUE and, on information and belief, of OPEN TRIP. He coerced, compelled, incited, aided and/or abetted the acts of discrimination alleged herein. On information and belief, plaintiff alleges that SIMPSON is a domiciliary of California.

8. RECH is an individual and was at all material times an employee of BOUTIQUE and, on information and belief, of OPEN TRIP. He coerced, compelled, incited, aided and/or abetted the acts of discrimination alleged herein. On information and belief, plaintiff alleges that RECH is a domiciliary of Texas.

9. On information and belief, there exist agents or employees of BOUTIQUE and OPEN TRIP that acted within the scope of said agency or employment, whose capacities are as yet unknown to plaintiff but were acting in concert with BOUTIQUE and OPEN TRIP. Plaintiff shall seek leave of this Court to amend and supplement this Complaint when the identities of such agents or employees become known to her.

## JURISDICTION

10. Plaintiff asserts claims for violation of Title VII of the Federal Civil Rights Act of 1964 and the Federal Fair Labor Standards Act, and for reporting violations of Federal regulations promulgated by the Federal Aviation Administration. This Court therefore has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

11. Claims arising under the laws of the states of Oregon and California are asserted herein pursuant to this Court's supplemental jurisdiction as provided by 28 U.S.C. § 1367(a) as they arise out of the same transactions, occurrences, and events as those claims arising out of Federal law.

**VENUE**

12. Defendants BOUTIQUE and OPEN TRIP are headquartered in the City and County of San Francisco, which is within the Northern District of California. Venue is therefore proper in this District pursuant to 28 U.S.C. § 1391(b)(1).

**FACTS COMMON TO ALL CLAIMS**

13. At all relevant times hereto prior to February 2019, SHULL was a resident and domiciliary of Portland, Oregon. From February 2019, until after the date of her constructive discharge on or about October 21, 2019, she was a resident and domiciliary of Los Angeles, California. In November of 2020, SHULL accepted an employment offer and relocated to Dallas, Texas, where as of the date of the filing of this Complaint, she is domiciled.

14. SHULL was hired by BOUTIQUE and OPEN TRIP as a commercial pilot in March of 2018. She held the position of Flight Officer, Second-in-Command, at all times during her employment. SHULL's initial position was based out of Portland, Oregon, flying out of Portland International Airport ("PDX"). She transferred to fly out of Los Angeles International Airport in Los Angeles, California ("LAX") on February 1, 2019.

***Shull's Compensation***

15. Pursuant to the Boutique Flight Crew Handbook, it is customary for BOUTIQUE/OPEN TRIP pilots to be paid a monthly guarantee unless the pilot reports unavailable to work during a portion of the month. The initial monthly guarantee for the beginning of SHULL's employment was 80 hours per month, however, the monthly

guarantee was cut back to 70 hours per month by BOUTIQUE/OPEN TRIP as of February 1, 2019. If a pilot is unavailable for part of the month, however, guarantee is reduced and only block time is paid for flights, referring to the time of closure of the aircraft door prior to a flight to opening the door upon the end of the flight. However, both guarantee and block time compensation do not include compensation for all time spent on duty, engaged in activities either directed or suffered by BOUTIQUE/OPEN TRIP, for BOUTIQUE/OPEN TRIP's benefit.

16. As described below, SHULL's call-outs or scheduling needs resulting from the actions described more fully below periodically caused her to be considered "unavailable to work" by BOUTIQUE/OPEN TRIP, and thus on some occasions BOUTIQUE/OPEN TRIP reduced her guarantee and paid SHULL on a strictly "block time" basis. This had the effect of causing her actual pay for all work performed ("duty time") to diminish, on occasion falling below the applicable Oregon or California minimum wage.

17. During her time in Oregon, SHULL's compensation was governed by the then-minimum wage prevailing in Multnomah County, Oregon, which was first $11.25 per hour and then $12.00 per hour beginning July 1, 2018, for all duty time, referring to all work performed at BOUTIQUE/OPEN TRIP's direction and sufferance. From time to time, BOUTIQUE/OPEN TRIP's payroll practices caused her actual rate of compensation for duty time to fall below this rate, even when receiving monthly guarantee.

18. During her time in California, SHULL's compensation was governed by the then-minimum wage prevailing in the County of Los Angeles, which at first was $13.25 per hour and then $14.25 per hour beginning July 1, 2019, for all duty time, referring to all work performed at BOUTIQUE/OPEN TRIP's direction and sufferance. From time to time, BOUTIQUE/OPEN TRIP's payroll practices caused her actual rate of compensation for duty time to fall below this rate, even when receiving monthly guarantee.

19. On at least two occasions during her tenure with BOUTIQUE/OPEN TRIP, SHULL's actual compensation fell below the minimum wage prevailing under the Federal Fair Labor Standards Act, of $7.50 per hour, for all duty time, referring to all work performed at BOUTIQUE/OPEN TRIP's direction and sufferance.

***Inappropriate Response to Physical Disability Restrictions,***
***Use of Sick Leave, and Workers' Compensation Claims***

20. On April 28, 2018, SHULL suffered an on-the-job injury to her back in Oregon. She promptly reported her injury to BOUTIQUE/OPEN TRIP. Despite having been thus put on notice of SHULL's injury, BOUTIQUE/OPEN TRIP thereafter failed to promptly tender a claim for workers' compensation benefits for processing.

21. On January 19, 2019, SHULL suffered a second on-the-job injury in Oregon, this time to her head. She immediately notified BOUTIQUE/OPEN TRIP of the injury. Despite having been thus put on notice of SHULL's injury, BOUTIQUE/OPEN TRIP again thereafter failed to promptly tender a claim for workers' compensation benefits for processing.

22. SHULL called out sick on January 20, 2019 due to the injury she sustained as described above in paragraph 21.

23. In response, a scheduler for BOUTIQUE/OPEN TRIP emailed SHULL, informing her that she had 3 sick occurrences in the last three months and four in the last year. He then demanded that SHULL provide a doctor's note for the January 20, 2019 sick time call-out.

24. SHULL visited a doctor and provided BOUTIQUE/OPEN TRIP with a note confirming as much, despite Oregon law not requiring an employee to provide a doctor's note until three consecutive absences.

25. SHULL sustained a third on-the-job injury to her eye on June 16, 2019 while working for BOUTIQUE/OPEN TRIP out of Los Angeles, CA. She visited a doctor and provided BOUTIQUE/OPEN TRIP with a note the following day. Despite having been thus put on notice of SHULL's workplace injury, BOUTIQUE/OPEN TRIP again failed to promptly tender a claim for workers' compensation benefits for processing.

26. Again, BOUTIQUE/OPEN TRIP delayed the filing of this claim, requiring SHULL to follow up three months later, in September 2019, to request claim paperwork and necessary treatment.

27. On information and belief, BOUTIQUE/OPEN TRIP retaliated against SHULL, in substantial part, for invoking the workers' compensation systems of both Oregon and California, and in eventually pursuing workers' compensation claims in both states, as described further below.

28. SHULL has medical conditions resulting from the injury sustained at work described above in paragraph 20, affecting her ability to engage in major life activities, including but not limited to the lifting and carrying of baggage weighing over 25 pounds, adjustment of cockpit seat position, and various bends and stretches.

29. Such restrictions on physical activity is an actual disability as defined by 42 U.S.C. § 12102(1)(A), California Government Code § 12940(a, j) and interpretive regulation thereto 2 California Code of Regulations § 11065(d)(2)(B) and Oregon Statutes section 659A.104(1)(a), as well as the perception of an impairment as defined by 42 U.S.C. § 12102(1)(C), 2 CCR § 11065(d)(2)(B), and Oregon Statutes section 659A.104(1)(c).

30. While recovering from the injury sustained on April 28, 2018, medical restrictions on SHULL's ability to load and unload baggage were placed upon her by her treating physicians.

31. At all relevant times, BOUTIQUE/OPEN TRIP was aware of SHULL's 2018 injury, her invocation of the workers' compensation system, and restrictions placed upon

her physical activity resulting from this injury. SHULL indicated her desire and need for accommodations to BOUTIQUE/OPEN TRIP.

32. BOUTIQUE/OPEN TRIP's usual practice involves flight officers loading and unloading baggage from the aircraft. Subsequent to her 2018 injury, medical restrictions on her workplace activity were brought to BOUTIQUE/OPEN TRIP's attention, and consequently accommodations were made for her work duties involving the shifting of certain tasks to other employees.

33. Subsequently, BOUTIQUE/OPEN TRIP failed to communicate the accommodations to personnel necessary to implement them, failed to enforce the implementation of accommodations, and failed to prevent employees of BOUTIQUE/OPEN TRIP from creating a hostile workplace environment, with conditions sufficiently severe and pervasive as to alter the conditions of work, including *inter alia*:

a. On multiple occasions, BOUTIQUE/OPEN TRIP failed to inform ground crew and customer service agents at destination airports (other than PDX or LAX) of SHULL's need for accommodation, resulting in SHULL having to disclose her medical condition and request assistance from other employees, which in turn resulted in substantial disagreements with those other employees;

b. A Customer Service Agent manager on one occasion complained that SHULL "belong[ed] in an office!" upon one occasion in which SHULL was unable to assist with baggage loading;

c. A different Customer Service Agent manager complained of SHULL's inability to make a bed at a crew house in Pendleton, Oregon;

d. From April to September of 2018 and on isolated incidents thereafter, a pilot seated in the same seat used by SHULL during her flights refused repeatedly to return her seat to its standard position when she finished her shift;

e. On or about July 9, 2019, a Customer Service Agent falsely claimed that a new policy prevented this employee from assisting with loading bags from inside

the airplane, leaving SHULL without assistance but also without physical ability to perform the task.

34. SHULL repeatedly advised BOUTIQUE/OPEN TRIP of these workplace conditions, and the fact that they created a hostile workplace environment, yet they persisted for the duration of her employment. Despite being placed on notice of these events, BOUTIQUE/OPEN TRIP failed to take effective remedial action to prevent the recurrence of the behaviors described above in paragraph 33 and resulting hostile workplace environment.

***Sexualized Behavior by a Pilot-in-Command***

35. In June of 2018, SHULL was assigned to fly with a particular Pilot-in-Command ("PIC") who was temporarily covering shifts out of PDX from his usual Denver ("DEN") base, referred to herein as "PIC #1". In this capacity, PIC #1 was SHULL's superior with respect to all matters related to preparation and operation of the aircraft.

36. During the time that PIC #1 was assigned by BOUTIQUE/OPEN TRIP to serve as PIC out of PDX, PIC #1 would engage in unwelcome sexualized behavior, including:

a. He would rub and squeeze SHULL's leg while in the cockpit, and initiate physical contact between his hand and SHULL's leg while operating the aircraft controls;

b. He would greet SHULL with phrases indicating familiarity and attraction such as "Hey, Beautiful" and "Hey, Love."

c. During this same time, PIC #1 and SHULL were expected to share off-duty living quarters in the Pendleton crew house when away from their home base airports. On one occasion in this crew house, PIC #1 began to rub SHULL's shoulders

while they were seated at the dinner table, obliging SHULL to request that he stop immediately.

37. Further during this time, PIC #1 was known to BOUTIQUE/OPEN TRIP to be over familiar with other female employees as well, including Customer Service Agents. PIC #1 was known to also offer or give shoulder rubs to those female employees and was heard to ask one female employee who was then in the midst of a divorce, “When are you going to be single?” This behavior caused a peer of PIC #1 to suggest that PIC #1 “lay off the girls.”

38. SHULL complained to BOUTIQUE/OPEN TRIP on November 1, 2018 of PIC #1’s conduct after learning that PIC #1 was being transferred to PDX (which, at the time, was SHULL’s home base airport), dramatically increasing the likelihood that he would be assigned to fly alongside her in the future, and subject her to further unwelcome conduct, as described above in paragraphs 36 and 37, due to the small number of available pilot pairings.

39. On information and belief, BOUTIQUE/OPEN TRIP retaliated against SHULL, in substantial part, for reporting these highly questionable sexual harassment issues with PIC #1, of which BOUTIQUE/OPEN TRIP already had notice of similar behavior with other employees, as described further below.

***Retaliation for Safety Call-Out (Portland)***

40. On or about September 12, 2018, SHULL experienced fatigue following various days of flying with minimal rest, pursuant to a schedule set by BOUTIQUE/OPEN TRIP and using rest facilities provided by BOUTIQUE/OPEN TRIP. Pursuant to FAA regulations, SHULL attempted to call out as fatigued but was unable to reach other schedulers. After completing three legs of assigned flight for the day, SHULL

was eventually able to inform BOUTIQUE/OPEN TRIP of her fatigued status and obtain relief for the remainder of her flights.

41. BOUTIQUE/OPEN TRIP subsequently imposed discipline upon SHULL, in the form of a Corrective Action Form issued by Assistant Chief Pilot Mark Hendrix. BOUTIQUE/OPEN TRIP indicated in this form that should SHULL call out as fatigued again in the next month, her employment was to be terminated.

42. On or about October 3, 2018, SHULL responded to BOUTIQUE/OPEN TRIP in writing, stating *inter alia* that she had attempted from the beginning of her day to report her condition, indicating that facilities provided by BOUTIQUE/OPEN TRIP away from her home base of Portland failed to provide adequate opportunities for rest, and protesting that she was being punished for complying with FAA regulations.

43. On or about October 25, 2018, BOUTIQUE/OPEN TRIP then issued a "Fatigue Event Finding Report" purporting to be non-punitive in nature, but which included language specifically reminding SHULL of her requirement to obtain rest in the time provided.

44. SHULL complained of the above sequence of events to the FAA.

45. On information and belief, BOUTIQUE/OPEN TRIP retaliated against SHULL, in substantial part, for calling out fatigued, and for reporting these safety issues associated with the safe operation of aircraft and her complaint to the FAA, as described further herein.

***Reporting Crew House Safety and Privacy Issues***

46. On or about June 9, 2018, the crew house in Pendleton, Oregon suffered a failure of the lock on the front door after weeks of being in disrepair, obliging SHULL and the Pilot-in-Command ("PIC") also housed there that evening, PIC #1, to wedge a

chair under the door to secure the house. SHULL reported this maintenance and safety issue to BOUTIQUE/OPEN TRIP the next day.

47. Similarly, slide locks on the other doors of the crew house were insecure, and the door frame suffered from degradation and cracking. SHULL reported this maintenance and safety issue to BOUTIQUE/OPEN TRIP on or about September 30, 2018.

48. On October 8, 2018, SHULL reported that medical records of BOUTIQUE/OPEN TRIP employees had been left in plain view in the Pendleton crew office.

49. On October 14, 2018, SHULL noticed the Pendleton crew house lacked a carbon monoxide detector and had only a single smoke detector for the entire house. SHULL reported this maintenance and safety issue to BOUTIQUE/OPEN TRIP on or about October 14, 2018.

50. On information and belief, BOUTIQUE/OPEN TRIP retaliated against SHULL, in substantial part, for reporting these safety and privacy issues associated with the maintenance and use of the Pendleton crew house and crew office, as described further herein.

### *Retaliation for Safety Reports (Los Angeles)*

51. On or about May 17, 2019, SHULL flew a flight as Second-in-Command with a particular Pilot-in-Command, identified herein as PIC #2, from LAX to Merced, California. Upon landing at Merced, SHULL noticed the illumination of a Central Advisory and Warning System (CAWS) light indicating a mechanical failure in the aircraft.

52. When the CAWS light was still illuminated prior to the next flight, SHULL expressed concern to PIC #2, who told her that it was “fine.” PIC #2 stated that he was in

contact with the base captain and that if the light was still an issue when they landed at LAX, it would be checked out.

53. SHULL responded that she was uncomfortable with this plan, as they are not supposed to perform take-off with the CAWS light illuminated. It was so important that it was a checklist item prior to taking off. PIC #2 advised SHULL that he had spoken with maintenance and the base captain at LAX and identified workarounds.

54. SHULL later spoke with the base captain referenced above. He commented on the incident, but his comment revealed that he had a false understanding of what exactly happened. His comments and subsequent conversation revealed that he had not been consulted as PIC #2 had assured SHULL. SHULL later learned that PIC #2 had falsely reported a landing gear failure.

55. On May 21, 2019, SHULL reported the circumstances of the May 17, 2019 flight to BOUTIQUE/OPEN TRIP, in the person of Assistant Chief Pilot Michael RECH. By May 30, 2019 neither RECH nor any other person acting on behalf of BOUTIQUE/OPEN TRIP responded to SHULL's safety complaint in any meaningful way. SHULL then filed a complaint concerning the flight with the FAA.[1]

56. On or about May 23, 2019, SHULL was flying with PIC #2. On this flight she observed this PIC #2 engage in practices which she considered unsafe, including but not limited to reading his personal electronic device during inappropriate phases of flight. SHULL complained to BOUTIQUE/OPEN TRIP of PIC #2's flying techniques on or about May 23, 2019, on or about May 28, 2019, and again on or about June 3, 2019.

57. On or about August 17, 2019, SHULL also complained to BOUTIQUE/OPEN TRIP concerning the safety practices of a third PIC, identified herein as PIC #3. In these complaints, SHULL indicated unwillingness to fly with PICs about

[1] Shull's complaint was subsequently validated by the FAA's investigation.

whom she had previously complained as unsafe. The complaints were addressed to HENDRIX and Assistant Chief Pilot Raul de la Torre.

58. On information and belief, BOUTIQUE/OPEN TRIP retaliated against SHULL, in substantial part, for reporting these safety issues associated with the safe operation of aircraft, both internally and to the FAA, including but not limited to the reduction of her flight hours described herein, , despite her complaints of the same described in herein.

***Diminished Flight Hours In Los Angeles***

59. On or about February 1, 2019, at SHULL's request, SHULL was transferred by BOUTIQUE/OPEN TRIP to a new home airport, Los Angeles International Airport ("LAX"), necessitating a move of residence by SHULL from Portland, Oregon to Los Angeles, California. SHULL had requested the transfer to be away from conditions as described above in and around Portland, largely to minimize the potential to be harassed again by PIC #1, and to be the most-senior Second-in-Command pilot ("SIC") at the LAX base and thus to have priority for flight hours and advancement to the position of PIC, which carry better compensation, certifications, prestige, and responsibility, and which would elevate her earning prospects and responsibility should she have sought employment with a different air carrier.

60. BOUTIQUE/OPEN TRIP's custom and seniority practice was to provide the highest number of actual flight hours per month to the most senior SIC at a given airport base. Actual flight hours were important both for accumulating compensation (particularly for those flight hours above the guarantee, which were paid at a premium rate of time-and-a-half) and for career advancement. On information and belief, this is the practice to which BOUTIQUE/OPEN TRIP adhered in cases other than those

involving SHULL, and this practice was a significant factor in SHULL's desire to transfer to LAX, where she was the most senior SIC.

61. However, upon her transfer, SHULL was not given either preference for selection of flights nor priority for flight hours. Her actual flight hours were often cut, at times in half or more, by way of BOUTIQUE/OPEN TRIP's failure to schedule them, or by way of removing her from previously- scheduled hours after the schedule's issuance.

62. On information and belief, BOUTIQUE/OPEN TRIP was substantially motivated to govern itself thus with respect to SHULL by virtue of SHULL's sex, prior complaints of safety violations, prior reports of workplace injuries, requests for reasonable accommodations for her physical disabilities, and complaints about inappropriate conduct by PIC #1.

63. Pilots more junior to SHULL, but who had not made prior complaints of safety violations, had not made prior reports of workplace injuries, had not made requests for reasonable accommodations for physical disabilities, and/or had not made complaints about inappropriate conduct by other BOUTIQUE/OPEN TRIP employees were given priority for hours and preferred flight routes.

64. SHULL complained about the scheduling issues with BOUTIQUE/OPEN TRIP, through among others her immediate supervisor, Assistant Chief Pilot Olivia Ermel; with Crew Scheduler Brittney Arambula, and with Assistant Chief Pilot Michael Rech, but her hours did not increase after she pointed out the discrepancies. Rather, BOUTIQUE/OPEN TRIP initially denied that SHULL was getting fewer hours than the less senior SICs. Following the presentation of evidence from the scheduling system that SHULL indeed was flying fewer hours, BOUTIQUE/OPEN TRIP claimed that her hours had diminished because of her complaint about her unwillingness to fly with PICs about whom she had previously complained as unsafe. This claim was a pretense, as SHULL's flight hours had diminished soon after her transfer to LAX and before her safety complaints about that pilot. Further, SHULL was repeatedly scheduled to fly with pilots

about whom she had previously complained of unsafe flight practices and despite BOUTIQUE/OPEN TRIP's assurances that she would not be so scheduled.

65. This pattern of conduct slowed SHULL's advance towards eligibility to become a Pilot-in-Command and advance her career either with BOUTIQUE/OPEN TRIP or with other commercial air carriers. It also resulted in a diminishment of immediate and future compensation.

66. When SHULL inquired as to why she was receiving fewer hours than expected in LAX, the Assistant Chief Pilot Michael RECH assured her that SHULL had been scheduled for the most hours of all SIC's, which assurance was false. In truth and fact, at least two other SICs from LAX, both of whom to SHULL's knowledge and belief had not made safety or other complaints, were not only being awarded more flight hours but were receiving premium pay for hours scheduled over the 70-hour monthly guarantee. At least one SIC junior to SHULL received enough hours that she was able to secure a promotion to PIC during SHULL's time at LAX.

***Shull Is Constructively Discharged***

67. After enduring the above pattern of actions from BOUTIQUE/OPEN TRIP, including

a. the failure of BOUTIQUE/OPEN TRIP to prevent the creation of a hostile workplace environment based upon disability and invocation of claims to benefits under Oregon and California's workers compensation system;

b. an ineffectual response to a complaint of sexualized conduct by PIC #1;

c. disregard of various safety complaints;

d. minimal pay for work performed;

e. cutting back on actually-scheduled flight hours and thus preventing SHULL from achieving promotions and career advancement;

f. the granting of promotions and career advancement to non-complaining pilots; and

g. being scheduled to fly along with pilots whose safety practices she had previously put BOUTIQUE/OPEN TRIP on notice were unacceptable and in violation of FAA regulations,

a reasonable person in SHULL's position would have concluded that her employment was no longer desired by BOUTIQUE/OPEN TRIP. In fact, SHULL did so conclude, and on October 1, 2019, she did the only reasonable thing left to her and offered three weeks' notice to BOUTIQUE/OPEN TRIP in compliance with BOUTIQUE/OPEN TRIP's notice requirement.

68. Immediately thereafter, BOUTIQUE/OPEN TRIP's CEO, Shawn SIMPSON, demanded to discuss SHULL's complaints. SHULL advised that she had retained legal counsel who would discuss the issues with BOUTIQUE/OPEN TRIP at a later date. SIMPSON then accused SHULL of "insubordination" and docked her pay by $400 through manipulation of her PTO bank.

69. SHULL was constructively discharged on or about October 21, 2019.

70. Nevertheless, her career has been substantially harmed, both in the loss of earned but unpaid income, income that she would have derived had she been properly scheduled for flight hours at LAX absent BOUTIQUE/OPEN TRIP's retaliation, and further advancement of her career as a PIC whether she had remained at BOUTIQUE/OPEN TRIP or sought employment elsewhere after having earned such advancement. She has also suffered emotional distress, in the form of anger, frustration, resentment, and lost sleep, as a result of her treatment by her former employer and named aiders/abettors.

71. By and as a direct result of the foregoing actions, SHULL has been harmed in the form of loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

*Mitigation and Exhaustion of Administrative Relief*

72. Subsequent to her constructive discharge, SHULL has engaged in reasonable efforts to mitigate her damages by way of seeking substantially similar work.

73. SHULL has timely invoked, and subsequently exhausted, all administrative processes available to her before the Equal Employment Opportunity Commission ("EEOC"); the Oregon Bureau of Labor and Industries ("BOLI"), and the California Fair Employment and Housing Commission ("DFEH") prior to the filing of this action.

**FIRST CAUSE OF ACTION**

**CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY**

**Against Defendants BOUTIQUE and OPEN TRIP**

74. Plaintiff restates and realleges the contents of paragraphs 1 through 73 as if set forth herein fully.

75. SHULL was co-employed by BOUTIQUE and OPEN TRIP from March of 2018 through October of 2019.

76. As described above in paragraphs 1 through 73, SHULL was subjected to working conditions that violated public policy in that she was retaliated against for making safety complaints, for calling out when she was unsafe to fly, for complaining about questionable personnel practices, for invoking the workers' compensation systems of both OR and CA, and for requesting reasonable accommodations for limitations on her

physical abilities. The retaliation was substantial and continuous, and included scheduling SHULL with PICs she had previously complained against concerning unsafe flying practices and sexual harassment, and reduction of flight hours in contradiction to BOUTIQUE/OPEN TRIP's stated policies to the point of denying SHULL'S ability to seek promotion and advancement of her career.

77. Substantial California and Federal laws apply to promote the making of safety complaints, to foster safe flying conditions, to prevent the creation of hostile workplace environments, and to accommodate varying physical abilities of workers capable of performing the essential duties of their jobs with reasonable accommodations, including but not limited to a panoply of FAA safety regulations, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and the California Fair Employment and Housing Act.

78. BOUTIQUE/OPEN TRIP intentionally created, or knowingly permitted the existence of, these working conditions.

79. These working conditions were so intolerable that a reasonable person in SHULL'S position would have had no reasonable alternative but to resign.

80. SHULL did, in fact, resign as a result of these working conditions.

81. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

82. The working conditions caused or knowingly tolerated by BOUTIQUE/OPEN TRIP described herein were a substantial factor in harming SHULL.

83. On information and belief, BOUTIQUE/OPEN TRIP acted as alleged herein with oppression, fraud, and malice, in a conscious attempt to deprive SHULL of her rights and induce her constructive termination from employment.

**SECOND CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA LABOR CODE SECTION 1102.5(b)**

**Against Defendants BOUTIQUE and OPEN TRIP**

84. Plaintiff restates and realleges the contents of paragraphs 1 through 83 as if set forth herein fully.

85. At all times relevant hereto up to and including October 21, 2019, BOUTIQUE and OPEN TRIP were SHULL's co-employers.

86. The FAA is a government agency.

87. SHULL on multiple occasions disclosed information which she had reasonable cause to believe disclosed violations of federal statutes, state statutes, and federal regulations to other employees of BOUTIQUE/OPEN TRIP who had the authority to investigate, discover, and/or correct these violations of statutes and regulations, and to the FAA, including but not limited to those disclosures set forth in paragraphs 34, 38, 40 through 44, 48, and 51 through 56.

88. After making the disclosures described herein in paragraphs 34, 38, 40 through 44, 48, 51 through 56, and 87, BOUTIQUE/OPEN TRIP retaliated against SHULL for making said disclosures, including but not limited to by way of

a. cutting back on actually-scheduled flight hours and thus preventing SHULL from achieving promotions and career advancement,

b. granting promotions and career advancement to non-complaining pilots, and

c. being scheduled to fly along with pilots whose safety practices she had previously put BOUTIQUE/OPEN TRIP on notice were unacceptable.

89. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general

damages, in an amount to be shown by proof to be adduced at the time of trial.in an amount to be shown by proof to be adduced at the time of trial. On information and belief, BOUTIQUE/OPEN TRIP acted as alleged herein with oppression, fraud, and malice, in a conscious attempt to deprive SHULL of her rights and induce her constructive termination from employment.

**THIRD CAUSE OF ACTION**

**VIOLATION OF OREGON REVISED STATUTE 659A.199**

**(RETALIATION FOR REPORTING VIOLATIONS OF LAW)**

**Against Defendants BOUTIQUE and OPEN TRIP**

90. Plaintiff restates and realleges the contents of paragraphs 1 through 89 as if set forth herein fully.

91. When SHULL indicated that she was in a state of fatigue rendering her ability to fly questionable and requested to be relieved of duty as alleged in paragraph 40, and subsequently complained of BOUTIQUE/OPEN TRIP's punitive response to the same to the FAA as alleged in paragraph 44 *supra*, SHULL engaged in conduct protected by, *inter alia*, ORS 653.616(1) and ORS 653.641.

92. When SHULL reported on safety and privacy problems in the Pendleton crew house and the Pendleton office, as alleged in paragraphs 46-49 *supra*, SHULL engaged in conduct protected by, *inter alia*, ORS 653.616(1) and ORS 653.641.

93. BOUTIQUE/OPEN TRIP initially punished SHULL, and later retaliated against her, in substantial part for her fatigue call-out and for reporting problems in the Pendleton crew house and office, in violation of ORS 653.643, including but not limited to by way of

a. failure to properly respond to safety and other complaints;

b. cutting back on actually-scheduled flight hours and thus preventing SHULL from achieving promotions and career advancement;

c. granting promotions and career advancement to non-complaining pilots; and

d. being scheduled to fly along with pilots whose safety practices she had previously put BOUTIQUE/OPEN TRIP on notice were unacceptable.

94. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

95. On information and belief, BOUTIQUE/OPEN TRIP acted as alleged herein with oppression, fraud, and malice, in a conscious attempt to deprive SHULL of her rights and induce her constructive termination from employment.

**FOURTH CAUSE OF ACTION**

**FAILURE TO ACCOMMODATE DISBILITY IN VIOLATION OF**

**THE AMERICANS WITH DISABILITIES ACT**

**Against Defendants BOUTIQUE and OPEN TRIP**

96. Plaintiff restates and realleges the contents of paragraphs 1 through 95 as if set forth herein fully.

97. At all times relevant hereto up to and including October 21, 2019, SHULL was a qualified individual, able to pilot a commercial aircraft performing the function of a common carrier by virtue of her physical and intellectual abilities, experience, training, and FAA licensure, who was medically unable to lift and carry heavy bags.

98. At all times relevant hereto up to and including October 21, 2019, BOUTIQUE/OPEN TRIP was aware of and on notice of SHULL's need for reasonable

accommodation concerning the lifting and carrying of passenger baggage, and her desire for said accommodations, including the assistance of Customer Service Agents or a PIC to assist with the performance of these tasks.

99. With the assistance of a Customer Service Agent or a PIC to assist with the handling of baggage, SHULL would have been and was able to perform the essential duties of an SIC pilot. Such accommodations would have been, and when performed were, reasonable and did not impose any undue hardship on BOUTIQUE/OPEN TRIP.

100. On multiple occasions during the course of SHULL's employment with BOUTIQUE/OPEN TRIP, occurring both during her time based in PDX and her time based in LAX, BOUTIQUE/OPEN TRIP failed to accommodate SHULL's need and desire for accommodation to perform the functions of her job, including but not limited to the failure of Customer Service Agents to assist SHULL in loading and offloading baggage to an aircraft.

101. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

**FIFTH CAUSE OF ACTION**

**FAILURE TO ACCOMMODATE DISBILITY IN VIOLATION OF OREGON REVISED STATUTE 659A.112**

**Against Defendants BOUTIQUE and OPEN TRIP**

102. Plaintiff restates and realleges the contents of paragraphs 1 through 101 as if set forth herein fully.

103. From April 28, 2018 (the date of her first on-the-job injury affecting her physical abilities) through February 1, 2019, SHULL was a qualified individual, able to

pilot a commercial aircraft performing the function of a common carrier by virtue of her physical and intellectual abilities, experience, training, and FAA licensure, who was medically unable to lift and carry heavy bags.

104. From April 28, 2018 through February 1, 2019, BOUTIQUE/OPEN TRIP was aware of and on notice of SHULL's need for reasonable accommodation concerning the lifting and carrying of passenger baggage, and her desire for said accommodations, including the assistance of Customer Service Agents or a PIC to assist with the performance of these tasks.

105. With the assistance of a Customer Service Agent or a PIC to assist with the handling of baggage, SHULL would have been and was able to perform the essential duties of an SIC pilot. Such accommodations would have been, and when performed were, reasonable and did not impose any undue hardship on BOUTIQUE/OPEN TRIP.

106. On multiple occasions during the course of SHULL's employment with BOUTIQUE/OPEN TRIP From April 28, 2018 through February 1, 2019, BOUTIQUE/OPEN TRIP failed to accommodate SHULL's need and desire for accommodation to perform the functions of her job, including but not limited to the failure of Customer Service Agents to assist SHULL in loading and offloading baggage to an aircraft.

107. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

**SIXTH CAUSE OF ACTION**

**FAILURE TO ACCOMMODATE DISBILITY IN VIOLATION OF CALIFORNIA GOVERNMENT CODE § 12940(a)**

**Against Defendants BOUTIQUE and OPEN TRIP**

108. Plaintiff restates and realleges the contents of paragraphs 1 through 107 as if set forth herein fully.

109. From February 1, 2019 through October 21, 2019, SHULL was a qualified individual, able to pilot a commercial aircraft performing the function of a common carrier by virtue of her physical and intellectual abilities, experience, training, and FAA licensure, who was medically unable to lift and carry heavy bags.

110. From February 1, 2019 through October 21, 2019, BOUTIQUE/OPEN TRIP was aware of and on notice of SHULL's need for reasonable accommodation concerning the lifting and carrying of passenger baggage, and her desire for said accommodations, including the assistance of Customer Service Agents or a PIC to assist with the performance of these tasks.

111. With the assistance of a Customer Service Agent or a PIC to assist with the handling of baggage, SHULL would have been and was able to perform the essential duties of an SIC pilot. Such accommodations would have been, and when performed were, reasonable and did not impose any undue hardship on BOUTIQUE/OPEN TRIP.

112. On multiple occasions during the course of SHULL's employment with BOUTIQUE/OPEN TRIP, occurring both during her time based in PDX and her time based in LAX, BOUTIQUE/OPEN TRIP failed to accommodate SHULL's need and desire for accommodation to perform the functions of her job, including but not limited to the failure of Customer Service Agents to assist SHULL in loading and offloading baggage to an aircraft.

113. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

114. On information and belief, BOUTIQUE/OPEN TRIP acted as alleged herein with oppression, fraud, and malice, in a conscious attempt to deprive SHULL of her rights and induce her constructive termination from employment.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF OREGON REVISED STATUTE 659A.040**

**RETALIATION FOR CLAIMING WORKERS COMPENSATION BENEFITS**

**Against Defendants BOUTIQUE and OPEN TRIP**

115. Plaintiff restates and realleges the contents of paragraphs 1 through 114 as if set forth herein fully.

116. On April 28, 2018 and January 19, 2019, SHULL was injured on the job, promptly notified BOUTIQUE/OPEN TRIP, and subsequently pursued OR claims for workers' compensation benefits, as alleged in paragraphs 20 and 30. At the time, she was stationed at PDX.

117. Subsequent to her injuries and her invocation of the OR workers' compensation system, BOUTIQUE/OPEN TRIP retaliated against SHULL for having so invoked, including but not limited to

a. failing to consistently accommodate her resulting disability;

b. tolerating and failing to redress hostile workplace environments resulting from accommodations of her disability;

c. failing to effectively respond to SHULL's complaints of inappropriate conduct by PIC #1;

d. failing to appropriately tender her workplace injury claims to the appropriate insurers; and

e. failing to schedule SHULL for flying time consistent with its own practices and procedures.

118. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

**EIGHTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA LABOR CODE SECTION 132a**

**RETALIATION FOR CLAIMING WORKERS COMPENSATION BENEFITS**

**Against Defendants BOUTIQUE and OPEN TRIP**

119. Plaintiff restates and realleges the contents of paragraphs 1 through 118 as if set forth herein fully.

120. On April 28, 2018 and January 19, 2019, SHULL was injured on the job, promptly notified BOUTIQUE/OPEN TRIP, and subsequently pursued OR claims for workers' compensation benefits, as alleged in paragraphs 20 and 30. At the time, she was stationed at PDX.

121. Subsequent to her injuries and her invocation of the OR workers' compensation system, BOUTIQUE/OPEN TRIP retaliated against SHULL for having so invoked, including but not limited to

a. failing to consistently accommodate her resulting disability;

b. tolerating and failing to redress hostile workplace environments resulting from accommodations of her disability;

c. failing to effectively respond to SHULL's complaints of inappropriate conduct by PIC #1;

d. failing to appropriately tender her workplace injury claims to the appropriate insurers; and

e. failing to schedule SHULL for flying time consistent with its own practices and procedures.

122. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

**NINTH CAUSE OF ACTION**

**SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2**

**Against Defendants BOUTIQUE and OPEN TRIP**

123. Plaintiff restates and realleges the contents of paragraphs 1 through 122 as if set forth herein fully.

124. On information and belief, motivated substantially upon her sex, SHULL was treated in a disparate and less advantageous fashion than her male equivalents regarding preference for scheduled flight hours, with effects upon both her earnings and her ability to qualify for and secure promotion and advancement; and subjected to the unequal terms and conditions of employment described herein culminating in her constructive discharge from BOUTIQUE/OPEN TRIP's employment.

125. On information and belief, BOUTIQUE/OPEN TRIP acted as alleged herein with malice and/or reckless indifference to SHULL's rights, in a conscious attempt to deprive SHULL of her rights and induce her constructive termination from employment

126. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

**TENTH CAUSE OF ACTION**
**SEX DISCRIMINATION IN VIOLATION OF**
**OREGON REVISED STATUTE 659A.030**
**Against Defendants BOUTIQUE and OPEN TRIP**

127. Plaintiff restates and realleges the contents of paragraphs 1 through 126 as if set forth herein fully.

128. On information and belief, motivated substantially upon her sex, SHULL was treated in a disparate and less advantageous fashion than her male equivalents regarding preference for scheduled flight hours, with effects upon both her earnings and her ability to qualify for and secure promotion and advancement; and subjected to the unequal terms and conditions of employment described herein culminating in her constructive discharge from BOUTIQUE/OPEN TRIP's employment.

129. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

**ELEVENTH CAUSE OF ACTION**
**SEX DISCRIMINATION IN VIOLATION OF**
**CALIFORNIA GOVERNMENT CODE § 12940(a)**
**Against Defendants BOUTIQUE and OPEN TRIP**

130. Plaintiff restates and realleges the contents of paragraphs 1 through 129 as if set forth herein fully.

131. On information and belief, motivated substantially upon her sex, SHULL was treated in a disparate and less advantageous fashion than her male equivalents

regarding preference for scheduled flight hours, with effects upon both her earnings and her ability to qualify for and secure promotion and advancement; and subjected to the unequal terms and conditions of employment described herein culminating in her constructive discharge from BOUTIQUE/OPEN TRIP's employment.

132. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

133. On information and belief, BOUTIQUE/OPEN TRIP acted as alleged herein with oppression, fraud, and malice, in a conscious attempt to deprive SHULL of her rights and induce her constructive termination from employment.

**TWELFTH CAUSE OF ACTION**
**DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2**
**RETALIATION FOR REPORTING ALLEGED SEXUAL HARASSMENT**
**Against Defendants BOUTIQUE and OPEN TRIP**

134. Plaintiff restates and realleges the contents of paragraphs 1 through 133 as if set forth herein fully.

135. At the time SHULL reported on the conduct of PIC #1 described above in paragraphs 35 through 37, SHULL reasonably and actually believed that she was reporting conduct that constitutes sexual discrimination or sexual harassment in violation of Title VII, and her acts described in paragraph 38 thus are protected by 42 U.S.C. § 2000e-3(a).

136. BOUTIQUE/OPEN TRIP retaliated against SHULL for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, culminating in SHULL's subsequent constructive discharge, by, *inter alia*:

a. its ineffectual response to SHULL's protected complaints;

b. subsequently cutting back on actually-scheduled flight hours and thus preventing SHULL from achieving promotions and career advancement;

c. granting of promotions and career advancement to non-complaining pilots; and

d. scheduling SHULL to fly along with pilots whose safety practices she had previously put BOUTIQUE/OPEN TRIP on notice were unacceptable, yet only removing the trips from her schedule upon her complaints rather than leaving her on the flights and removing the unsafe pilots instead.

137. On information and belief, BOUTIQUE/OPEN TRIP acted as alleged herein with malice and/or reckless indifference to SHULL's rights, in a conscious attempt to deprive SHULL of her rights and induce her constructive termination from employment

138. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.in an amount to be shown by proof to be adduced at the time of trial.

**THIRTEENTH CAUSE OF ACTION**

**VIOLATION OF OREGON REVISED STATUTE 659A.199**

**RETALIATION FOR REPORTING ALLEGED SEXUAL HARASSMENT**

**Against Defendants BOUTIQUE and OPEN TRIP**

139. Plaintiff restates and realleges the contents of paragraphs 1 through 138 as if set forth herein fully.

140. At the time SHULL reported on the conduct of PIC #1 described above in paragraphs 35 through 37, SHULL reasonably and actually believed that she was

reporting activity prohibited by actually believed that she was reporting conduct that constitutes sexual discrimination or sexual harassment in violation of ORS 659A.030., and her acts described in paragraph 38 thus are protected by ORS 659A.199(1).

141. BOUTIQUE/OPEN TRIP retaliated against SHULL for engaging in protected activity, in violation of ORS 659A.199(1), culminating in SHULL's subsequent constructive discharge, by, *inter alia*:

a. its ineffectual response to SHULL's protected complaints;

b. subsequently cutting back on actually-scheduled flight hours and thus preventing SHULL from achieving promotions and career advancement;

c. granting of promotions and career advancement to non-complaining pilots; and

d. scheduling SHULL to fly along with pilots whose safety practices she had previously put BOUTIQUE/OPEN TRIP on notice were unacceptable, yet only removing the trips from her schedule upon her complaints rather than leaving her on the flights and removing the unsafe pilots instead.

142. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

## FOURTEENTH CAUSE OF ACTION
## VIOLATION OF CALIFORNIA GOVERNMENT CODE § 12940(a)
## RETALIATION FOR REPORTING ALLEGED SEXUAL HARASSMENT
## Against Defendants BOUTIQUE and OPEN TRIP

143. Plaintiff restates and realleges the contents of paragraphs 1 through 142 as if set forth herein fully.

144. At the time SHULL reported on the conduct of PIC #1 described above in paragraphs 35 through 37, SHULL reasonably and actually believed that she was reporting activity prohibited by actually believed that she was reporting conduct that constitutes sexual discrimination or sexual harassment in violation of Cal. Gov't Code § 12940, and her acts described in paragraph 38 thus are protected by that statute.

145. BOUTIQUE/OPEN TRIP retaliated against SHULL for engaging in protected activity, in violation of Cal. Gov't Code § 12940(a), culminating in SHULL's subsequent constructive discharge, by, *inter alia*:

a. its ineffectual response to SHULL's protected complaints;

b. subsequently cutting back on actually-scheduled flight hours and thus preventing SHULL from achieving promotions and career advancement;

c. granting of promotions and career advancement to non-complaining pilots; and

d. scheduling SHULL to fly along with pilots whose safety practices she had previously put BOUTIQUE/OPEN TRIP on notice were unacceptable, yet only removing the trips from her schedule upon her complaints rather than leaving her on the flights and removing the unsafe pilots instead.

146. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

147. On information and belief, BOUTIQUE/OPEN TRIP acted as alleged herein with oppression, fraud, and malice, in a conscious attempt to deprive SHULL of her rights and induce her constructive termination from employment.

148. SHULL was harmed by a direct and proximate result of BOUTIQUE/OPEN TRIP'S actions complained of herein, including but not limited to loss of income, loss of

earned pay, diminution of future earning capacity, emotional distress and general damages, in an amount to be shown by proof to be adduced at the time of trial.

**FIFTEENTH CAUSE OF ACTION**

**VIOLATION OF OREGON REVISED STATUTE 659A.030(1)(g)**

**Against Defendants HENDRIX, SIMPSON, and RECH**

149. Plaintiff restates and realleges the contents of paragraphs 1 through 148 as if set forth herein fully.

150. Through their conduct, HENDRIX, SIMPSON, and RECH participated in, condoned, aided, incited, compelled, and/or coerced unlawful discrimination and retaliation in violation of ORS 659A.030(1)(g).

151. As a direct and proximate consequence of the above-described unlawful discriminatory conduct of HENDRIX, SIMPSON, and RECH, SHULL has suffered loss of income and other forms of compensation.

152. Plaintiff has further suffered emotional distress and other non-pecuniary losses as a direct and proximate consequence of the above-described unlawful discriminatory conduct of HENDRIX, SIMPSON, and RECH.

153. Plaintiff is entitled to recover her reasonable attorneys' fees pursuant to ORS 659A.885. She is also entitled to recover her expert witness fees pursuant to ORS 20.107.

**SIXTEENTH CAUSE OF ACTION**

**VIOLATION OF FEDERAL FAIR LABOR STANDARDS ACT**

**Against Defendants BOUTIQUE and SIMPSON**

154. Plaintiff restates and realleges the contents of paragraphs 1 through 153 as if set forth herein fully.

155. Pursuant to 29 U.S.C. § 206(a)(1)(C), the minimum wage for all persons employed in the United States is $7.50 per hour for work performed at the direction or sufferance of an employer.

156. Pursuant to 29 U.S.C. § 203(d), an "employer" for purposes of the Federal Fair Labor Standards act includes any natural person acting directly or indirectly in the interest of an entity employer in relation to an employee, and therefore includes all individuals who are actively engaged in or responsible for the implementation of a compensation scheme used by an entity to compensate its employees. SIMPSON is the CEO of BOUTIQUE/OPEN TRIP and therefore, in his individual capacity, an "employer" as defined by 29 U.S.C. § 203(d).

157. During at least one week period of time during SHULL's employment with BOUTIQUE/OPEN TRIP, Defendants, and all of them, caused SHULL to be compensated at a rate that fell below the Federal minimum wage for work actually performed at BOUTIQUE/OPEN TRIP's direction and sufferance, referred to in the industry as "duty time."

158. Pursuant to 29 U.S.C. § 216(b) SHULL is entitled to penalties and liquidated damages for violations of the Federal minimum wages, in addition to other remedies provided for by law.

159. SHULL has suffered damages and is entitled to liquidated damages in an amount to be shown by proof to be adduced at the time of trial.

**SEVENTEENTH CAUSE OF ACTION**

**VIOLATION OF OREGON REVISED STATUTE 653.025 (FAILURE TO PAY MINIMUM WAGE)**

**Against Defendants BOUTIQUE and OPEN TRIP**

160. Plaintiff restates and realleges the contents of paragraphs 1 through 159 as if set forth herein fully.

161. Pursuant to ORS 653.025, the prevailing minimum wage in Multnomah County, Oregon during the time of SHULL's employment with BOUTIQUE/OPEN TRIP and basing in PDX which was first $11.25 per hour through June 30, 2018 and then $12.00 per hour beginning July 1, 2018.

162. Prior to filing this lawsuit, SHULL made written demand for payment of full wages.

163. During at least one week period of time during SHULL's employment with BOUTIQUE/OPEN TRIP at PDX, BOUTIQUE/OPEN TRIP caused SHULL to be compensated at a rate that fell below the applicable minimum wage for work actually performed at BOUTIQUE/OPEN TRIP's direction and sufferance, referred to in the industry as "duty time."

164. SHULL is entitled to collect the difference between her wages received and the applicable Oregon minimum wages due in an amount to be proven at trial, together with attorney fees and costs, as well as pre- and post-judgment interest, and the 30 days of statutory penalty wages as provided by ORS 653.055 and ORS 652.150, and all other remedies available at law.

165. SHULL has suffered damages and is entitled to penalties, interest, and attorney's fees in an amount to be shown by proof to be adduced at the time of trial.

**EIGHTEENTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA LABOR CODE § 1197 (FAILURE TO PAY MINIMUM WAGE)**

**Against Defendants BOUTIQUE and OPEN TRIP**

166. Plaintiff restates and realleges the contents of paragraphs 1 through 165 as if set forth herein fully.

167. Pursuant to California Labor Code § 1197 and Los Angeles County Ordinance 8.100.040(A)(1), the prevailing minimum wage in Los Angeles County during the time of SHULL's employment with BOUTIQUE/OPEN TRIP and basing in LAX was $13.25 per hour through June 30, 2019 and $14.25 from July 1, 2019 through the end of SHULL's employment with BOUTIQUE/OPEN TRIP.

168. During at least one week period of time during SHULL's employment with BOUTIQUE/OPEN TRIP at LAX, BOUTIQUE/OPEN TRIP caused SHULL to be compensated at a rate that fell below the applicable minimum wage for work actually performed at BOUTIQUE/OPEN TRIP's direction and sufferance, referred to in the industry as "duty time."

169. SHULL is entitled to collect the difference between her wages received and the applicable California minimum wages due in an amount to be proven at trial, together with attorney fees and costs, as well as pre- and post-judgment interest, and statutory penalty wages and liquidated damages per Cal. Labor Code § 1194, § 1194.2, § 1194.5, § 1197.1, § 1197.2, and all other remedies available at law.

170. SHULL has suffered damages and is entitled to penalties, interest, and attorney's fees in an amount to be shown by proof to be adduced at the time of trial.

**NINETEENTH CAUSE OF ACTION**

**VIOLATION OF OREGON REVISED STATUTE 653.606 *et seq*. (SICK LEAVE RETALIATION)**

**Against Defendants BOUTIQUE and OPEN TRIP**

171. Plaintiff restates and realleges the contents of paragraphs 1 through 170 as if set forth herein fully.

172. At all relevant times in this Complaint, BOUTIQUE/OPEN TRIP employed at least ten (10) employees and were thus required to implement a sick time policy under ORS 653.606 that allows an employee to accrue at least one hour of paid sick time for every 30 hours worked.

173. Pursuant to ORS 653.626, an employer may request medical verification of sick time if an employee takes more than three consecutive scheduled workdays of sick time.

174. On January 20, 2019, SHULL attempted to utilize accrued sick leave after sustaining an on-the-job injury. BOUTIQUE/OPEN TRIP required a doctor's note after one day's absence, in violation of ORS 653.626.

175. BOUTIQUE/OPEN TRIP retaliated against SHULL for her attempt to utilize sick time, in violation of ORS 653.641.

176. SHULL has suffered damages and is entitled to penalties, interest, and attorney's fees in an amount to be shown by proof to be adduced at the time of trial.

**TWENTIETH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA LABOR CODE § 202**

**(FAILURE TO PAY ALL EARNED WAGES DUE UPON DISCHARGE)**

**Against Defendants BOUTIQUE and OPEN TRIP**

177. Plaintiff restates and realleges the contents of paragraphs 1 through 176 as if set forth herein fully.

178. SHULL's employment with BOUTIQUE/OPEN TRIP ended on October 21, 2019, having previously given three weeks' advance notice of the effective date of her constructive discharge.

179. BOUTIQUE/OPEN TRIP failed to pay SHULL for all work performed at its directions and sufferance as October 21, 2019.

180. SHULL is entitled to collect the difference between her wages received and the applicable California minimum wages due in an amount to be proven at trial, together with attorney fees and costs, as well as pre- and post-judgment interest, and statutory penalty wages per Cal. Labor Code § 203 and all other remedies available at law.

181. SHULL has suffered damages and is entitled to waiting time penalties, interest, and attorney's fees in an amount to be shown by proof to be adduced at the time of trial.

**TWENTY-FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA LABOR CODE § 226**

**(FAILURE TO PROVIDE ACCURATE ITEMIZED PAY STATEMENTS)**

**Against Defendants BOUTIQUE and OPEN TRIP**

182. Plaintiff restates and realleges the contents of paragraphs 1 through 181 as if set forth herein fully.

183. California Labor Code § 226(a) requires defendants to provide employees with accurate, itemized statements accompanying each payment of wages ("pay stubs") that show, *inter alia*, total hours worked by the employee (Labor Code § 226(a)(2)) and all applicable hourly rates in effect during the pay period (Labor Code § 226(a)(9)).

184. However, SHULL's pay stubs report her hours worked, and compute her pay upon, a stated period of time other than (and less than) total hours actually worked.

On information and belief, the pay stubs report SHULL's guarantee time, but not her duty time. Her pay stubs therefore fail to provide an accurate itemized pay statement because they fail to report her actual hours worked, nor do they reflect the actual hourly rate of compensation.

185. On information and belief, BOUTIQUE/OPEN TRIP has failed to keep accurate records of SHULL's duty time (which is synonymous with her actual hours worked). On information and belief, plaintiff alleges BOUTIQUE/OPEN TRIP's decision to track guarantee time rather than duty time on pilot pay stubs was knowing and intentional.

186. California Labor Code § 226.3 provides that any employer who violates section California Labor Code § 226(a) or who fails to keep the records required in that law shall be subject to a civil penalty of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation. California Labor Code § 226(e)(1) further provides that an injured employee is entitled to recover all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

187. SHULL has suffered damages and is entitled to waiting time penalties, interest, and attorney's fees in an amount to be shown by proof to be adduced at the time of trial.

## PRAYER FOR RELIEF

**AS TO THE FIRST CAUSE OF ACTION**

**FOR CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY:**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;
2. For punitive and exemplary damages;
3. For costs of suit herein incurred;
4. For such other and further relief as may be just and lawful;

**AS TO THE SECOND CAUSE OF ACTION**

**FOR VIOLATION OF CALIFORNIA LABOR CODE § 1102.5:**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;
2. For attorney's fees as permitted by law;
3. For punitive and exemplary damages;
4. For costs of suit herein incurred;
5. For such other and further relief as may be just and lawful;

**AS TO THE THIRD CAUSE OF ACTION**

**FOR VIOLATION OF OREGON REVISED STATUTE 659A.199:**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;
2. For attorney's fees as permitted by law;
3. For costs of suit herein incurred;
4. For such other and further relief as may be just and lawful;

**AS TO THE FOURTH CAUSE OF ACTION**
**FOR FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION**
**OF THE AMERICANS WITH DISABILITIES ACT:**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;
2. For attorney's fees as permitted by law;
3. For costs of suit herein incurred;
4. For such other and further relief as may be just and lawful;

**AS TO THE FIFTH CAUSE OF ACTION**
**FOR FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION**
**OF OREGON REVISED STATUTE 659A.112:**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;
2. For attorney's fees as permitted by law;
3. For costs of suit herein incurred;
4. For such other and further relief as may be just and lawful;

**AS TO THE SIXTH CAUSE OF ACTION**
**FAILURE TO ACCOMMODATE DISBILITY IN VIOLATION OF**
**CALIFORNIA GOVERNMENT CODE § 12940(a):**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;
2. For attorney's fees as permitted by law;
3. For costs of suit herein incurred;
4. For such other and further relief as may be just and lawful;

**AS TO THE SEVENTH CAUSE OF ACTION**

**VIOLATION OF OREGON REVISED STATUTE 659A.040**

**RETALIATION FOR CLAIMING WORKERS COMPENSATION BENEFITS:**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;
2. For attorney's fees as permitted by law;
3. For costs of suit herein incurred;
4. For such other and further relief as may be just and lawful;

**AS TO THE EIGHTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA LABOR CODE SECTION 132a**

1. For compensatory and general damages up to the maximum permitted by statute, in an amount to be proven by evidence to be adduced at trial;
2. For attorney's fees as permitted by law;
3. For costs of suit herein incurred up to the maximum permitted by statute;
4. For such other and further relief as may be just and lawful;

**AS TO THE NINTH CAUSE OF ACTION**

**SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;
2. For attorney's fees as permitted by law;
3. For costs of suit herein incurred;
4. For such other and further relief as may be just and lawful;

**AS TO THE TENTH CAUSE OF ACTION**
**SEX DISCRIMINATION IN VIOLATION OF**
**OREGON REVISED STATUTE 659A.030:**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;
2. For attorney's fees as permitted by law;
3. For costs of suit herein incurred;
4. For such other and further relief as may be just and lawful;

**AS TO THE ELEVENTH CAUSE OF ACTION**
**SEX DISCRIMINATION IN VIOLATION OF**
**CALIFORNIA GOVERNMENT CODE § 12940(a)**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;
2. For attorney's fees as permitted by law;
3. For costs of suit herein incurred;
4. For such other and further relief as may be just and lawful;

**AS TO THE TWELFTH CAUSE OF ACTION**
**DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2**
**RETALIATION FOR REPORTING ALLEGED SEXUAL HARASSMENT**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;
2. For attorney's fees as permitted by law;
3. For costs of suit herein incurred;
4. For such other and further relief as may be just and lawful;

**AS TO THE THIRTEENTH CAUSE OF ACTION**

**VIOLATION OF OREGON REVISED STATUTE 659A.199**

**RETALIATION FOR REPORTING ALLEGED SEXUAL HARASSMENT**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;

2. For attorney's fees as permitted by law;

3. For costs of suit herein incurred;

4. For such other and further relief as may be just and lawful;

**AS TO THE FOURTEENTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA GOVERNMENT CODE § 12940(a)**

**RETALIATION FOR REPORTING ALLEGED SEXUAL HARASSMENT**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;

2. For attorney's fees as permitted by law;

3. For costs of suit herein incurred;

4. For such other and further relief as may be just and lawful;

**AS TO THE FIFTEENTH CAUSE OF ACTION**

**VIOLATION OF OREGON REVISED STATUTE 659A.030(1)(g)**

1. For compensatory and general damages, in an amount to be proven by evidence to be adduced at trial;

2. For attorney's fees as permitted by law;

3. For costs of suit herein incurred;

4. For such other and further relief as may be just and lawful;

**AS TO THE SIXTEENTH CAUSE OF ACTION**

**VIOLATION OF FEDERAL FAIR LABOR STANDARDS ACT**

1. For compensatory damages, in an amount to be proven by evidence to be adduced at trial;
2. For liquidated damages, in an amount to be proven by evidence to be adduced at trial;
3. For prejudgment and postjudgment interest, in an amount to be proven by evidence to be adduced at trial;
4. For attorney's fees as permitted by law;
5. For costs of suit herein incurred;
6. For such other and further relief as may be just and lawful;

**AS TO THE SEVENTEENTH CAUSE OF ACTION**

**VIOLATION OF OREGON REVISED STATUTE 653.025 (FAILURE TO PAY MINIMUM WAGE)**

1. For compensatory damages, in an amount to be proven by evidence to be adduced at trial;
2. For statutory penalties, in an amount to be proven by evidence to be adduced at trial;
3. For prejudgment and postjudgment interest, in an amount to be proven by evidence to be adduced at trial;
4. For attorney's fees as permitted by law;
5. For costs of suit herein incurred;
6. For such other and further relief as may be just and lawful;

**AS TO THE EIGHTEENTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA LABOR**

**CODE § 1197 (FAILURE TO PAY MINIMUM WAGE)**

1. For a civil penalty of a civil penalty of two hundred fifty dollars ($250) per violation for in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation;

2. For statutory penalties, in an amount to be proven by evidence to be adduced at trial;

3. For prejudgment and postjudgment interest, in an amount to be proven by evidence to be adduced at trial;

4. For attorney's fees as permitted by law;

5. For costs of suit herein incurred;

6. For such other and further relief as may be just and lawful;

**AS TO THE NINETEENTH CAUSE OF ACTION**

**VIOLATION OF OREGON REVISED STATUTE**

**653.606 *et seq*. (SICK LEAVE RETALIATION)**

1. For compensatory damages, in an amount to be proven by evidence to be adduced at trial;

2. For statutory penalties, in an amount to be proven by evidence to be adduced at trial;

3. For prejudgment and postjudgment interest, in an amount to be proven by evidence to be adduced at trial;

4. For attorney's fees as permitted by law;

5. For costs of suit herein incurred;

6. For such other and further relief as may be just and lawful;

**AS TO THE TWENTIETH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA LABOR CODE § 202**

**(FAILURE TO PAY ALL EARNED WAGES DUE UPON DISCHARGE)**

**Against Defendants BOUTIQUE and OPEN TRIP**

1. For compensatory damages, in an amount to be proven by evidence to be adduced at trial;

2. For statutory penalties, in an amount to be proven by evidence to be adduced at trial;

3. For prejudgment and postjudgment interest, in an amount to be proven by evidence to be adduced at trial;

4. For attorney's fees as permitted by law;

5. For costs of suit herein incurred;

6. For such other and further relief as may be just and lawful.

**AS TO THE TWENTY-FIREST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA LABOR CODE § 226**

**(FAILURE TO PROVIDE ACCURATE ITEMIZED PAY STATEMENTS)**

**Against Defendants BOUTIQUE and OPEN TRIP**

1. For all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) as provided by Cal. Labor Code § 226(e);

2. For a civil penalty of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, as provided by Cal. Labor Code § 226.3;

3. For attorney's fees as permitted by law;

4. For costs of suit herein incurred;

5. For such other and further relief as may be just and lawful.

December 3, 2020

Respectfully Submitted,

GUNDERSON EMPLOYMENT LAW

/s/ Erik Gunderson
By: Erik Gunderson
California Bar No. 171982

THE DALTON LAW FIRM

/s/ Alana G. I. Simmons
By: Alana G. I. Simmons
*Pro Hac Vice* application pending, Oregon Bar No. 143456

Attorneys for Plaintiff JENNIFER SHULL

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all claims triable by a jury.

December 3, 2020

Respectfully Submitted,

GUNDERSON EMPLOYMENT LAW

/s/ Erik Gunderson
By: Erik Gunderson
California Bar No. 171982

THE DALTON LAW FIRM

/s/ Alana G. I. Simmons
By: Alana G. I. Simmons
*Pro Hac Vice* application pending, Oregon Bar No. 143456

Attorneys for Plaintiff JENNIFER SHULL